1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

THOMAS D. KNIGHT,

11
                        Plaintiff,

12
        v.

13
JO ANNE B. BARNHART, Commissioner of
Social Security,

14
15
                        Defendant.

16

CASE NO.     C05-5450RBL

REPORT AND
RECOMMENDATION

Noted for February 17, 2006

17
18      Plaintiff, Thomas D. Knight, has brought this matter for judicial review of the denial of his

19  applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has

20  been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

21  Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261

22  (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following

23  report and recommendation for the Honorable Ronald B. Leighton's review.

24                           FACTUAL AND PROCEDURAL HISTORY

25      Plaintiff currently is forty-seven years old.[1]  Tr. 72.  He has an eleventh grade education and past

26  work experience as a construction and utility worker. Tr. 121, 249.

27
28
        [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access
to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

On January 25, 1996, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of December 1, 1995, due to diabetes mellitus, right eye amblyopia and obesity. Tr. 19, 103-06, 248. Both applications were denied initially and on reconsideration. Tr. 72-74, 80, 248. A hearing was held before an administrative law judge ("ALJ") on June 17, 1998, at which plaintiff, represented by counsel, appeared and testified. Tr. 39-71. On February 14, 1999, the ALJ issued a decision, determining plaintiff to be not disabled because he was capable of performing other jobs existing in significant numbers in the national economy. Tr. 19-26.

Plaintiff's request for review was denied by the Appeals Council on June 26, 2002, making the ALJ's decision the Commissioner's final decision. Tr. 10; 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481. Plaintiff filed a complaint with this court on August 7, 2002, seeking review of the Commissioner's denial of his applications for disability insurance and SSI benefits. See C02-5393RJB (Dkt. #1). Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 68, defendant's offer of judgment, and plaintiff's notice of acceptance of offer of judgment, the court remanded the matter back to the Commissioner for additional administrative proceedings. See C02-5393RJB (Dkt. #8, #9, and #12).

On remand from this court, a second hearing was held before a different ALJ on January 14, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 286-314. On April 17, 2004, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)    at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)    at step two, plaintiff had "severe" impairments consisting of obesity, right eye amblyopia and degenerative joint disease;

(3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    at step four, plaintiff had the residual functional capacity to perform light work, with certain other non-exertional limitations; and

(5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 245, 255-56. Plaintiff's request for review was denied by the Appeals Council on June 3, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 240; 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481.

On July 6, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt.

#1, #2 and #3).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

    (a)    the ALJ erred in not finding plaintiff's headaches, carpal tunnel syndrome and diabetes mellitus to be "severe";

    (b)    the ALJ erred in not finding plaintiff's obesity met or equaled the criteria of former 20 C.F.R. Part 404, Subpart P, Appendix 1, § 9.09;

    (c)    the ALJ erred in assessing plaintiff's credibility;

    (d)    the ALJ erred in assessing plaintiff's residual functional capacity; and

    (e)    the ALJ erred in finding plaintiff not disabled at step five of the disability evaluation process.

The undersigned finds, however, that the ALJ did not err in determining plaintiff to be not disabled, and therefore recommends that the court affirm the ALJ's decision.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    The ALJ's Step Two Analysis Was Proper

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  At step two of that process, the ALJ must determine if an impairment is "severe". Id.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c): 20 C.F.R. § 416.920(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual['s] ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

Plaintiff argues the ALJ erred in not finding his headaches, carpal tunnel syndrome and diabetes mellitus to be severe.  With respect to plaintiff's headaches and carpal tunnel syndrome, the ALJ found as follows:

> The undersigned does not find that the claimant has any limitations from headaches or from carpal tunnel syndrome.  Dr. Austin specifically noted that the claimant had no manipulative limitations.  The claimant takes no medications to address his allegedly severe headaches.  Headaches will usually respond to medication, and the claimant has not even tried over the counter medications that can be found in a liquid form if he truly dislikes pills.  If the claimant were significantly limited by his headaches he would try to treat them.  I noted that the claimant's wife works full time and he could probably afford over the counter pain medication.

Tr. 251.  In terms of plaintiff's diabetes mellitus, the ALJ found it appeared "to be fairly well controlled."  Tr. 252.  The undersigned finds the ALJ's findings to be supported by substantial evidence.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."

1   Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the

2   ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

3          The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

4   either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

5   treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

6   legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the

7   ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739

8   F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

9   why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07

10  (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

11         In general, more weight is given to a treating physician's opinion than to the opinions of those who

12  do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

13  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or

14  "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

15  1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242

16  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

17  opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may

18  constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-

19  31; Tonapetyan, 242 F.3d at 1149.

20         Although plaintiff is correct in pointing out that there is objective medical evidence in the record to

21  support a finding that he does have such impairments, that evidence does not show those impairments are

22  "severe," i.e., that they more than minimally affect his ability to perform basic work activities.  Thus, for

23  example, in mid-January 1995, while plaintiff was noted to be "moderately obese" and weight loss was

24  recommended, no other "restrictions to work activity" were noted. Tr. 220.  In late February 1996, he was

25  diagnosed with probable right carpal tunnel syndrome. Tr. 207.  On examination, plaintiff did appear to

26  have "some loss of pinprick sensation" in his right wrist and hand, but experienced no swelling or loss of

27  strength in that area. Tr. 206-07.

28         A physical residual functional capacity assessment form completed in early March 1996, by two non-

examining consulting physicians, did opine that plaintiff should not employ "continuous strong manipulation," apparently on the basis of his late February 1996 examination, but did not state that this was due to his carpal tunnel syndrome as opposed to his degenerative joint disease. Tr. 145, 206-07.  In January 1997, plaintiff was diagnosed with type II diabetes mellitus, but again, no work-related limitations were noted to have resulted from that diagnosis. Tr. 218-19.  Indeed, in late January 1997, he was found to be "responding well" to medication. Tr. 218.

Plaintiff did report experiencing "numbness in his feet" in late April 1997, which was found "likely due to neuropathy from his diabetes," but he had "no tingling or paralysis." Tr. 217.  It also appears that he had been non-compliant in checking his blood sugars. See Tr. 216-17.  Plaintiff was diagnosed as having "uncontrolled" diabetes and "chronic" headaches in early March 1998, but his physical examination was fairly unremarkable, and again no work-related restrictions were noted. Tr. 214.

Dr. Daryl Austin examined plaintiff in late October 1998.  Plaintiff reported that he did not check his blood sugars frequently, and had "never had any known history of diabetic retinopathy, necropathy or neuropathy." Tr. 224.  Dr. Austin did not find any work-related limitations stemming from his diabetes, and found specifically that his "ability to use his hands for grasping, manipulating, performing fine and dextrous maneuvers" and his ability to reach and feel appeared to be intact. Tr. 228.  Given that Dr. Austin is an examining physician, it was appropriate for the ALJ to adopt his findings regarding plaintiff's alleged hand limitations over those of the non-examining consulting physicians in the record. Lester, 81 F.3d at 830-31.  The medical expert who testified at the second hearing further noted that there "were no recorded complications of diabetes," and that plaintiff's headaches were not "specifically treated." Tr. 292.

Plaintiff further argues the objective medical evidence was supported by observations of various nurse practitioners who cared for and treated him.  As discussed above, however, that objective medical evidence does not support plaintiff's allegations that his headaches, carpal tunnel syndrome, and diabetes mellitus are severe.  In addition, nurse practitioners are not "acceptable medical sources" as that term is defined in the Social Security Regulations, and, as such, their opinions are entitled to less weight than the opinions of those who are.  See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (acceptable medical sources include licensed physicians, not nurse practitioners); 20 C.F.R. § 404.1513(a), (d); 20 C.F.R. § 416.913(a), (d).

1    The particular nurse practitioner evidence plaintiff points to, furthermore, only shows that plaintiff

2 had complained of symptoms relating to his diabetes mellitus and headaches, and not that he actually had

3 significant work-related limitations. See Plaintiff's Opening Brief, p. 9; Tr. 214, 216-17, 219. Along those

4 lines, plaintiff argues that his "credible testimony" also supported his allegations regarding the claimed

5 additional severe impairments. As discussed below, however, the ALJ did not err in discounting plaintiff's

6 credibility.

7    II.    The ALJ Did Not Err in Evaluating Plaintiff's Obesity at Step Three

8    At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if

9 they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the

10 "Listings"). 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the

11 claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id. The burden of

12 proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings.

13 Tacket, 180 F.3d at 1098.

14    A mental or physical impairment "must result from anatomical, physiological, or psychological

15 abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20

16 C.F.R. § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and

17 laboratory findings." Id. An impairment meets a listed impairment "only when it manifests the specific

18 findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

19 An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs,

20 and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed

21 impairment." Id. at *2. However, "symptoms alone" will not justify a finding of equivalence. Id.

22    At step three of the disability evaluation process, the ALJ found in relevant part as follows:

23    The medical evidence indicates that the claimant has obesity, right eye amblyopia and
      degenerative joint disease, impairments that are "severe" within the meaning of the
24    [Social Security] Regulations, but not "severe" enough to meet or medically equal,
      either singly or in combination to one of the impairments listed in Appendix 1, Subpart
25    P, Regulations No. 4. The claimant argues that Listing 9.09 should be applied to the
      claimant even though the listing was eliminated in 1999. Listing 9.09 related to obesity.
26    He sites [sic] Kokal v. Massanari (363 F.Supp 2d 1122 (N.D. Cal. 2001)) for the
      supposition that the elimination of the listing should not apply to cases that were
27    pending appeal at the time the listing was eliminated.

28    I note that the stipulated remand order for the Court did not direct me to apply listing
      9.09. Indeed, the instructions were to specifically re-evaluate the claimant's residual
      functional capacity. This is only done at the fourth and fifth step, so it appears the court

was not instructing me to further consider the listings.  The prior decision in this case
addressed the listing and specifically found that it was not met.  This was not disturbed
by the court. . . .

Dr. [Grant Edward] Deger [the medical expert at the second hearing] testified that no
listing was met.  He indicated that the degenerative changes in the claimant's spine were
mild.  The undersigned has considered the claimant's obesity and its impact on his back
impairment and on his diabetes, but I still conclude that the claimant does not have an
impairment of listing level severity.

Tr. 251-52.

Plaintiff argues that under <u>Kokal</u> and other similar decisions, former Listing 9.09A is applicable to
applications such as his, which were pending review by the Appeals Council at the time the Commissioner
deleted that Listing.  Apparently the courts and circuits are split on this issue, and there appears to be no
Ninth Circuit case on point. The undersigned finds, however, that this issue need not be decided in this case,
as it appears the prior ALJ correctly found plaintiff did not meet former Listing 9.09A.  Former Listing
9.09A reads in relevant part as follows:

*Obesity*.  Weight equal to or greater than the values specified in Table I for males . . .
and one of the following:

A.  History of pain and limitation of motion in any weight-bearing joint or the
lumbosacral spine (on physical examination) associated with findings on medically
acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine.

<u>See</u> attachment to Plaintiff's Opening Brief.

With respect to whether or not plaintiff met the criteria of former Listing 9.09, the prior ALJ found
as follows:

The claimant has no impairment which meets the criteria of any of the listed impairments
described in Appendix 1 of the [Social Security] Regulations (20 C.F.R., Part 404,
Subpart P, Appendix 1).  While at 350 pounds or more with a height of 73 inches, the
claimant's weight meets the requirements of 9.09 in the listing of impairments.
However, he has no secondary impairment necessary to meet the secondary criteria of
that listing.  The claimant has alleged low back problems, and he does have reduced
range of motion, but there is no indication of degenerative disc disease in the lumbar
spine sufficient to meet the requirements of section 9.09.  X-rays with three views of the
lumbar spine indicated minor degenerative disc alterations.  X-rays, CT scan and
myelogram that have been performed indicated mild changes in the cervical spine, which
is not sufficient to meet the requirements of the listing.

Tr. 20-21.  As noted above, Listing 9.09A requires "findings on medically acceptable imaging techniques of
<u>arthritis</u> in the affected joint or lumbosacral spine." <u>See</u> attachment to Plaintiff's Opening Brief (emphasis
added).  The only medically acceptable imaging technique in the record, however, indicated at most, as the
prior ALJ found,"minor degenerative disk alterations," and revealed no specific findings of arthritis. Tr.

1   229.  Accordingly, even if Listing 9.09A were to be applied again to plaintiff's obesity, he would not satisfy

2   the applicable criteria.

3       Plaintiff argues the testimony of the medical expert at the second hearing supports a finding that he

4   met former Listing 9.09A.  A careful reading of that testimony, however, shows plaintiff's argument to be

5   without merit.  It is true that Dr. Deger testified that plaintiff was "getting pretty large" at 350 pounds and

6   73 inches tall. Tr. 293.  As discussed above though, plaintiff also must provide medically acceptable imaging

7   techniques of arthritis, which does not appear anywhere in the record.  In addition, Dr. Deger did clearly

8   testify that there was nothing in the record "that would suggest" any of plaintiff's impairments met the

9   criteria of any of those in the Listings. Tr. 292.

10      Plaintiff's challenge to the second ALJ's determination to not apply former Listing 9.09A to his

11  obesity also comes a little late.  As discussed above, plaintiff already has had his obesity evaluated under

12  that Listing, and been found not to have met the appropriate criteria.  Also as discussed above, the prior

13  ALJ's findings regarding that issue appear to be supported by the substantial evidence in the record, and the

14  second ALJ therefore did not err in adopting those findings.  As the second ALJ noted in his decision,

15  furthermore, the court did not remand this matter for the purpose of re-considering the prior ALJ's step

16  three analysis.  Indeed, the language of defendant's offer of judgment, which plaintiff accepted without

17  qualification, sought remand solely to re-evaluate Dr. Austin's opinion, to re-assess plaintiff's residual

18  functional capacity, and to obtain the testimony of a vocational expert.  See C02-5393RJB (Dkt. #8 and #9).

19  Thus it does not seem appropriate to re-open the issue of the applicability of former Listing 9.09A at this

20  juncture.  In any event, as discussed above, the prior ALJ's determination that plaintiff's obesity did not

21  meet the criteria of that Listing, and the second ALJ's acceptance thereof, were proper.

22  III.   The ALJ Properly Assessed Plaintiff's Credibility

23      Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

24  639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination.  Allen, 749

25  F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is

26  based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

27  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

28  as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

1  Cir. 2001).

2        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

3  disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

4  what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v.

5  Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

6  the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at

7  834.  The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811,

8  818 (8th Cir. 2003).

9        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

10 evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

11 testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

12 also may consider a claimant's work record and observations of physicians and other third parties regarding

13 the nature, onset, duration, and frequency of symptoms. Id.

14       Plaintiff makes no specific challenge to the second ALJ's credibility determination other than to state

15 that his testimony was credible.  On this basis alone, the undersigned is inclined to find plaintiff has not

16 shown the ALJ's credibility determination to be improper.  The undersigned merely notes below for the

17 sake of completeness, that the reasons the ALJ did provide for finding plaintiff to be not entirely credible

18 were proper.

19       The ALJ, for example, discounted plaintiff's credibility in part because he did not provide a good

20 reason for failing to seeking treatment. Tr. 251; Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Meanal v.

21 Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious

22 medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)

23 (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower

24 level of pain and functional limitation).

25       The ALJ also discounted plaintiff's credibility due to his activities of daily living, such as the fact

26 that he continued to do "odd construction labor type jobs" and "drove around the local area for fun." Tr.

27 253; See Smolen, 80 F.3d at 1284 (ALJ may consider plaintiff's daily activities to determine whether his or

28 her symptom testimony is credible).  He further discounted plaintiff's credibility because his statements were

REPORT AND RECOMMENDATION
Page - 10

1   inconsistent with his alleged disabling impairments. See id. (ALJ may consider testimony that appears less

2   than valid and prior inconsistent statements concerning symptoms).  For example, the ALJ found plaintiff's

3   allegations that he needed to lie down during the day were inconsistent with his testimony that he could not

4   do commercial driving solely because of his vision impairment. Tr. 253.

5       Finally, a determination that a claimant's complaints are "inconsistent with clinical observations"

6   though can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d

7   1294, 1297 (9th Cir. 1998).  Here, the ALJ noted that no medical source in the record has found plaintiff to

8   be unable to work, and that Dr. Austin's assessment of plaintiff's functional limitations and Dr. Deger's

9   testimony support the conclusion that he is capable of performing a modified range of light work. Tr. 253.

10  Accordingly, the undersigned finds the ALJ did not err in discounting plaintiff's credibility.

11  IV.    The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

12      If a disability determination "cannot be made on the basis of medical factors alone at step three of

13  the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

14  assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

15  claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

16  his or her past relevant work, and at step five to determine whether he or she can do other work. Id.

17  Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

18      A claimant's residual functional capacity is the maximum amount of work the claimant is able to

19  perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

20  must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

21  limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

22  claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

23  related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

24  medical or other evidence." Id. at *7.

25      Here, the ALJ found plaintiff had the following residual functional capacity:

26      [T]he claimant could lift twenty pounds occasionally and ten pounds frequently.  He
        would need to avoid heights and moving machinery.  He could occasionally handle or
27      perform gross manipulative tasks.  He could occasionally climb, balance, stoop, kneel,
        crouch or crawl.

28
    Tr. 253.  Plaintiff argues the ALJ should have included the additional limitations of the need to nap during

1  the day and be near a toilet in the above residual functional capacity assessment, due to his diabetes, sleep

2  apnea and chronic headaches.  As discussed above, however, the weight of the medical evidence in the

3  record fails to support these additional limitations.  Also as discussed above, the ALJ properly discounted

4  the testimony of plaintiff, who is the primary evidentiary source for those alleged limitations.  Accordingly,

5  the ALJ did not err in excluding them from the above assessment.

6  V.     The ALJ's Step Five Analysis Was Proper

7        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

8  process the ALJ must show there are a significant number of jobs in the national economy the claimant is

9  able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ

10  can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-

11  Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157,

12  1162 (9th Cir. 2000).

13        An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

14  posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

15  1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

16  medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

17  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

18  the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

19  description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

20  2001).

21        The ALJ posed a hypothetical question to the vocational expert containing substantially the same

22  limitations as were included in the assessment of plaintiff's residual functional capacity. Tr. 309-10.  In

23  response to that question, the vocational expert testified that there were other jobs plaintiff could do. Tr.

24  310-11.  Based on the vocational expert's testimony, the ALJ found plaintiff not disabled at step five of the

25  disability evaluation process. Tr. 254.  Plaintiff argues again based on his own testimony that the ALJ

26  should have accepted as true the vocational expert's testimony that he would be incapable of performing

27  other work activity if he were to miss more than a couple of days of work a month, would have to take

28  more frequent breaks than regularly allowed by the employer, and would need to be in close proximity to

1   toilets. See Tr. 311.  As discussed above, however, because the ALJ properly discounted plaintiff's

2   credibility, he was not required to adopt these limitations.  Accordingly, the undersigned finds the ALJ did

3   not err in his step five analysis.

4                                          CONCLUSION

5          Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was

6   not disabled, and should affirm the ALJ's decision.

7          Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

8   the parties shall have ten (10) days from service of this Report and Recommendation to file written

9   objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

10  objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

11  imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 17,**

12  **2006**, as noted in the caption.

13         DATED this 23rd day of January, 2006.

14

15

16                                          Karen L. Strombom
                                            United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 13